The opinion of the Court was delivered by
Tilghman C. J.
This is an action against the Philadelphia Bank, for the sum of 500 offered by the directors, as a reward to the person who should discover and secure the perpetrators of a robbery, committed in the month of October in the year 1816. The defendants may be considered in the light of stake-holders, who are willing to pay the money in their hands, to the person entitled to the reward. The plaintiff claims it, and it is also claimed by a certain William Elliott, who gave notice to the bank not to pay it to the tiff. So that the persons really interested in the suit are Moore, the plaintiff, and William Elliott, who stands in the place of the bank, the nominal defendant. The cause was tried at Nisi Prius, before Judge Duncan, and the only question was, whether Moore or Elliott was the person who caused the robber of the bank, (one Earned,) to be apprehended. This was submitted as a fact for the decision of the jury, who found for the plaintiff, to the Judge’s entire satisfaction. A new trial has been moved for, on the ground *42 of material evidence discovered since the trial. Motions of this kind are to be received with great caution, because there are few cases tried, in which something new may not be hunted up, and because it tends very much to the introduction of perjury, to admit new evidence after the party who has lost the verdict, has had an opportunity of discovering the points both of his' adversary’s strength and his own weakness. It is therefore incumbent on him who asks for a new trial on this ground, to satisfy the Court, 1st, that the evidence has come to his knowledge since the trial. 2d. That it was not owing to want of due diligence, that it did not come sooner; and 3d. that it would probably produce a different verdict, if a new trial were granted. On the two first points, I am well enough satisfied. But not on the third. From a review of the evidence which was given on the trial, it appears without doubt, that Lamed was apprehended in consequence of information given by the plaintiff to William Elliott, his brother-in-law, and by him communicated to the cashier, and officers of the bank. The plaintiff kept a boarding house, in which Lamed lodged from the commission of the robbery to the time of his arrest. Some very suspicious circumstances were discovered by a maid servant in the family, of the name of Ann Tweedy, who disclosed them to her mistress, (the plaintiff’s wife,) by whom they were communicated to her husband. The wife, indeed, seems to have been most active in the business. Elliott was sent for, made fully acquainted with the causes of suspicion, and, as the plaintiff alleges, requested to give information to the officers of the bank, in order that Lamed might be arrested. On the contrary, Elliott asserts, that the information was given to him, not with a view to the arrest of Lamed, but in order that he might be secreted, until he could make his escape, the plaintiff and his wife apprehending, that the character of their house would be injured, should it be known that one of their boarders was a felon. This was the turning point of the cause. The plaintiff was supported principally by the evidence of Ann Tweedy, Martha Haslett, (the niece of Mrs. Moore,) who lived in the house at the time of this occurrence, and John Milliman, the constable by whom Lamed was arrested. The defendant endeavoured to discredit these witnesses, not by proving them infamous, but by contradictory evidence, and by shewing, that they had contradicted them *43 selves. He relied too, on the testimony of Sarah Barnes and Sarah Levis, who swore, that they had heard the plaintiff say, that the arrest of Lamed was against his wishes, and moreover, that he complained of Elliott for injuring him, by procuring the arrest. Nevertheless, the Court charged in favour of the plaintiff, and the jury found for him without leaving the bar. The evidence now offered in support of the defendant’s motion is of the same nature as that of Sarah Barnes and Sarah Levis, viz. declarations by the plaintiff, that the arrest was against his will. So that if the cause goes to a new trial, the witnesses will be in number, three against three; but strengthened on the part of the plaintiff, by the improbability of his having made declarations, which he must have known, would have been destructive of his claim to the reward. I am very far from thinking it probable, that this would produce a different result, especially as it is the opinion of my brother Duncan, that the plaintiff’s cause was well supported, and his witnesses not shaken by the evidence of the defendant. Considering then, that motions of this kind are not to be favoured, and that a new trial would probably be productive of no other consequences than waste of time, and additional trouble and expense to the party who asks for it, I am of opinion that the verdict should stand.
Motion for a new trial refused.